Argued December 2, affirmed December 27, 1971

# STATE OF OREGON, *Appellant, v.* MICHAEL PATRICK TAGGART, No. C-70-11-0387, *Respondent.*

491 P2d 1187

480

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*Douglas C. Morris,* Portland, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Langtry and Thornton, Judges.

SCHWAB, C. J.

After being indicted for armed robbery, ORS 163.280, defendant filed a pretrial motion to suppress all evidence seized during three separate searches, one of which was a warrantless search of his apartment. The trial court granted defendant's motion as to the

search of his apartment,[1] and the state has appealed this determination pursuant to ORS 138.060 (4).

The issue is whether defendant's landlady had the authority to consent to a warrantless search of defendant's apartment.

The search in question occurred the morning of November 5, 1970. Defendant was not present at his apartment at that time. Instead, police detectives were admitted to the apartment at their request by defendant's landlady. The trial court suppressed the evidence seized in this search.[2]

Warrantless searches "are *per se* unreasonable" subject to "a few specifically established and well-delineated exceptions." *Coolidge v. New Hampshire,* 403 US 443, 91 S Ct 2022, 29 L Ed 2d 564, 576, 588 (1971); *State v. Keith,* 2 Or App 133, 465 P2d 724, Sup Ct *review denied* (1970). One of the recognized exceptions is that of consent searches. *State v. Douglas,* 260 Or 60, 488 P2d 1366 (1971), *cert denied* 406 US 974 (1972). A consent search, in general, is a search consented to by the person affected. *Davis v. United States,* 328 US 582, 66 S Ct 1256, 90 L Ed 1453 (1946). Thus, in most cases the warrantless search of leased premises with only the permission of the landlord is unconstitutional. *Chapman v. United States,* 365 US 610, 81 S Ct 776, 5 L Ed 2d 828 (1961); *see, generally,* Note, *Third Party Consent to Search and Seizure,* 1967 Wash U L Q 12 (1967).

---

[1] The trial court denied defendant's motion to suppress the evidence seized during the other searches. This evidence consisted of currency taken by the robbers and other highly incriminating items.

[2] So far as the present record discloses, the only evidence seized in this search was an envelope upon which there was a diagram of the scene of the robbery.

To distinguish *Chapman v. United States,* supra, the state argues that the holding of that case applies only during the term of the tenancy, and that defendant's tenancy had ended due to nonpayment of rent.

■ The facts relevant to this contention are as follows. Defendant had rented the apartment in question on June 5, 1970, under an oral month-to-month lease. Rent for each month was to be paid in advance on the fifth day of the month. As cf November 5, 1970, the date of the search, the rent payment that should have been made on October 5, had not yet been made and was overdue. Some time during October, the landlady had spoken with a woman she knew as defendant's wife, and this woman had assured the landlady that the rent was forthcoming. The landlady was apparently content with this assurance.[9] The rent payment that should have been made October 5, 1970, was received by mail by the landlady on November 7, 1970.

Based on these facts, the state invokes portions of Oregon's landlord-tenant law in support of its argument that the landlady had the authority to admit the police to defendant's apartment. The state reasons that defendant's tenancy had terminated by operation of law under ORS 91.090, because defendant had failed to pay the rent due October 5, 1970, within the ten-day statutory grace period. Defendant then became a tenant at sufferance, ORS 91.040, and his continued possession wrongful, ORS 91.090, 105.110, 105.115 (1). Thus, the argument concludes, the landlady's rights in the premises were superior to defendant's.

---

[9] There was controversy in the testimony as to whether the landlady had decided to evict defendant prior to the November 5,

We need not decide whether this is good landlord-tenant law,[3] for, in any event, it is bad Fourth Amendment law. We recently rejected the notion that property concepts should be controlling in determining the scope of Fourth Amendment protections. *State v. Stanton,* 7 Or App 286, 490 P2d 1274 (1971). Instead, the proper inquiry is whether the defendant had a reasonable expectation of privacy as to the areas searched. *State v. Stanton, supra.* We hold that a tenant of leased residential premises,[4] whose landlord has acquiesced in the late payment of rent then due, and who does not know or have reason to know that the landlord has decided to terminate his tenancy, continues to have a reasonable expectation of privacy.

To hold otherwise would abolish the protections of the Fourth Amendment for a potentially large group of persons renting homes and apartments. For it is not unreasonable to assume that at one time or another many renters have been more than ten days late with a monthly rent payment. Whatever effect

---

1970, search. The trial court found as a fact that she had not made any such decision prior to that time, and this finding is supported by substantial evidence. State v. Fisher, 5 Or App 483, 484 P2d 864 (1971).

④ Even if this case had to turn on property concepts, we note the forfeiture provisions of ORS 91.090 are not without exception. Under the operation of that statute, the acceptance by the landlady of the past due rent would result in "the lease [being] reinstated for the full period fixed by its terms, subject to termination by subsequent defaults in payment of rent." Moreover, the landlady's acquiescence in the late payment of the rent could operate as an estoppel that in equity would prevent any forfeiture. *See,* Caine v. Powell, 185 Or 322, 202 P2d 931 (1949).

⑤ Our holding is limited to leased residential premises, as distinguished from hotel and motel rooms where the rule might be different. *See,* Abel v. United States, 362 US 217, 80 S Ct 683, 4 L Ed 2d 668, *rehearing denied* 362 US 984 (1960); State v. Roff, 70 Wash2d 606, 424 P2d 643 (1967).

this may have on their property rights in the leased premises, ORS 91.090, we cannot conclude that being late with a rent payment in itself curtails their constitutional rights.

Affirmed.