815 N.E.2d 863 (2004)
352 Ill. App.3d 63
287 Ill.Dec. 219
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Jarvis HARRIS, Defendant-Appellant.
No. 1-03-0674.
Appellate Court of Illinois, First District, Fourth Division.
August 26, 2004.
*866 Michael J. Pelletier, Deputy Defender, Office of the State Appellate Defender, Manuel S. Serritos, Assistant Appellate Defender, Chicago, for Defendant-Appellant.
Richard A. Devine, State's Attorney of Cook County, Chicago (Renee Goldfarb, Manny Magence, William Blumthal, Jr., of counsel), for Plaintiff-Appellee.
Justice GREIMAN delivered the opinion of the court:
After a bench trial, defendant was convicted of possession of a controlled substance with intent to deliver, pursuant to section 401 of the Illinois Controlled Substances Act (the Act) (720 ILCS 570/401(d) (West 2002)). On appeal, defendant argues that: (1) the police lacked probable cause to arrest him; (2) there was insufficient evidence to support his conviction because the State did not establish the proper chain of custody of the tested materials; (3) there was insufficient evidence to support his conviction because the State did not establish his intent to deliver the contraband; and (4) the trial court erred by failing to conduct a Krankel inquiry (People v. Krankel, 102 Ill.2d 181, 80 Ill.Dec. 62, 464 N.E.2d 1045 (1984)) into his claim of ineffective assistance of counsel. We affirm.
The court heard evidence on defendant's motion to quash arrest and suppress evidence simultaneously with the trial. Officer Dahl testified that around 6:30 p.m. on September 17, 2002, he conducted a surveillance with Officer Segura at 2237 South Hamlin in Chicago. He observed defendant from across the street, approximately 40 or 50 feet away. On three separate occasions during the surveillance, Dahl observed the following pattern of behavior. An unknown male would approach defendant and engage in a brief conversation. During the conversation, the man would tender to defendant an unknown amount of money. After accepting the money, defendant would reach into his right-hand pants pocket and retrieve a small object approximately the size of a quarter which he would then give to the man. Dahl stated that he did not know the object's color. Dahl testified that he had been a police officer for more than three years and had observed over 500 narcotics transactions. He is familiar with what narcotics look like when they are packaged for sale. Based on his experience, Dahl believed that defendant had engaged in three narcotics transactions.
In a marked police car, Dahl and his partner approached defendant while he was standing on the sidewalk. The officers walked over to defendant and began to talk to him. Defendant talked to them normally and did not attempt to flee or make any furtive movements. After talking a few minutes, the officers had defendant walk over to the car so they could pat him down to make sure he was not armed. The officers conducted the protective pat down based on what they had observed during their surveillance. After the pat down, they did not believe defendant had a gun. However, Dahl felt a few lumps on the outside of defendant's right pants pocket that he believed were narcotics. Dahl he reached into the pocket and retrieved two ziplock plastic bags containing a white, rock-like substance that he believed was cocaine. Defendant was then taken into custody. The other three men that the officers had observed in the transactions were not arrested.
Dahl kept the confiscated items on his person until he and his partner got to the station. At that point, he gave the items to his partner. Dahl observed his partner inventory the items as number 10030503. *867 Dahl also observed his partner conduct a custodial search of defendant which revealed that he was carrying $60.
The parties offered by way of stipulation that, if called to testify, forensic chemist Stevan Sarac would testify that he is qualified as an expert in the area of forensic chemistry. He received two items sealed under inventory number 10030503 and performed tests commonly accepted in the scientific community for ascertaining the presence of a controlled substance. In his opinion, the items tested positive for .1 gram of cocaine.
At the close of the State's evidence, defendant moved for a directed verdict, which the court denied. The defense then rested. The court simultaneously denied defendant's motion to quash arrest and suppress evidence (motion to suppress) and declared defendant guilty of the crime charged. Defendant filed a motion for reconsideration of the motion to suppress and a motion for new trial. Each was denied. Defendant was sentenced to the Cook County sheriff's boot camp incarceration program. This appeal follows.

Probable Cause
We first consider defendant's argument that the trial court erred in denying his motion to suppress. Generally, a trial court's ruling on a motion to suppress will not be disturbed unless it is manifestly erroneous. People v. Bunch, 207 Ill.2d 7, 13, 277 Ill.Dec. 658, 796 N.E.2d 1024 (2003). This deferential standard applies when the disposition of the suppression motion turns on factual determinations and credibility assessments. However, where no dispute exists as to the facts or witness credibility, the trial court's ruling will be reviewed de novo. Bunch, 207 Ill.2d at 13, 277 Ill.Dec. 658, 796 N.E.2d 1024. In the present case, the trial court found Officer Dahl's testimony credible. Such finding was not manifestly erroneous. Accordingly, we conduct de novo review under the officer's version of events. See Bunch, 207 Ill.2d at 13, 277 Ill.Dec. 658, 796 N.E.2d 1024.
Defendant argues that the court should have granted his motion to suppress because the police lacked probable cause to arrest him. Probable cause to arrest exists when the totality of the circumstances known to the officer at the time of the arrest would lead a reasonable, cautious person, standing in the shoes of the officer, to conclude that a crime has been committed and the defendant was the person who committed the crime. People v. Sims, 192 Ill.2d 592, 614, 249 Ill.Dec. 610, 736 N.E.2d 1048 (2000). However, something more than mere hunch or suspicion of criminal activity is required. People v. Little, 322 Ill.App.3d 607, 612, 255 Ill.Dec. 828, 750 N.E.2d 745 (2001). Courts, guided by common sense and practical considerations, must determine whether probable cause existed based on the facts known to the officers at the time the arrest was made. People v. Tisler, 103 Ill.2d 226, 236-37, 82 Ill.Dec. 613, 469 N.E.2d 147 (1984). A police officer's factual knowledge, based on prior law-enforcement experience, is relevant to determining whether probable cause existed. Tisler, 103 Ill.2d at 237, 82 Ill.Dec. 613, 469 N.E.2d 147.
After examining the totality of the circumstances known to Officer Dahl at the time defendant was apprehended, we conclude that he had probable cause to effectuate an arrest. Dahl testified that he observed defendant engage in several transactions in which defendant would accept money from a person; reach into his right-hand pants pocket; retrieve a quarter-sized object; then hand the object to the person. He further testified that he had observed over 500 drug transactions *868 and was familiar with how drugs were packaged for sale. Drawing on his experience, Dahl believed that defendant was engaged in drug activity.
Defendant contends that the activity the police observed in their surveillance could not elicit more than a suspicion or a hunch of suspected criminality. He argues that People v. Little, 322 Ill.App.3d 607, 255 Ill.Dec. 828, 750 N.E.2d 745 (2001), and People v. Odom, 83 Ill.App.3d 1022, 39 Ill.Dec. 406, 404 N.E.2d 997 (1980), support his position. We find both cases distinguishable. Specifically, in Little, while the court found that a motion to quash arrest and suppress would have had a reasonable probability of success under facts similar to those in the instant case, such was considered in the context of an effective assistance of counsel claim. Little, 322 Ill.App.3d at 613, 255 Ill.Dec. 828, 750 N.E.2d 745. Thus, the court employed a significantly different standard of review than that which we employ here. The Little court noted this distinction, qualifying its holding as follows:
"We are mindful of the limited nature of our inquiry on appeal and we do not pass on the question of whether such a motion would have been granted if presented by defendant's counsel. We simply hold that such a motion would have enjoyed a reasonable probability of success. Resolution of whether the arresting officers in this case were apprised of sufficient facts and information, in light of the circumstances surrounding defendant's activities, so as to justify their search and arrest of defendant is a question for the trial court." Little, 322 Ill.App.3d 607 at 613, 255 Ill.Dec. 828, 750 N.E.2d 745.
Accordingly, we find that Little does not aid us in our determination of this issue.
People v. Odom, 83 Ill.App.3d 1022, 39 Ill.Dec. 406, 404 N.E.2d 997 (1980), is also inapposite. In Odom, the court considered the legality of an arrest where the arresting officers' belief that defendant had engaged in narcotics activity was based exclusively on a tip from an informant. Odom, 83 Ill.App.3d at 1025, 39 Ill.Dec. 406, 404 N.E.2d 997. The court reversed the defendant's conviction for possession, finding that there was no evidence in the record as to how the informant knew that the object that he had seen in defendant's possession was actually a controlled substance. Odom, 83 Ill.App.3d at 1026, 39 Ill.Dec. 406, 404 N.E.2d 997. To the contrary, in the instant case, the record reveals that Dahl formed his belief that defendant was committing an illegal act through his own observation of defendant's actions and his prior experience in policing narcotic activity.
As stated previously, we find that the totality of the circumstances known to Officer Dahl at the time of the arrest would lead a reasonable, cautious person, standing in his shoes, to conclude that defendant was engaged in a narcotics transaction. Accordingly, we affirm the trial court's denial of defendant's motion to suppress.
Section 401(d) of the Act (720 ILCS 570/401(d) (West 2000)) provides that it is unlawful for any person to knowingly deliver less than one gram of certain controlled substances. Thus, in order to sustain a conviction for possession of a controlled substance with intent to deliver, the State must prove, beyond a reasonable doubt, that (1) defendant had knowledge of the presence of a controlled substance, (2) the controlled substance was in the immediate control and possession of defendant, and (3) the amount of the controlled substance exceeded that which could be viewed as merely for personal use. People v. Hodogbey, 306 Ill.App.3d 555, 559, 239 Ill.Dec. 775, 714 N.E.2d 1072 (1999).
*869 Defendant challenges the sufficiency of the evidence presented by the State in this case in two respects. First, he claims that the State failed to establish the proper chain of custody of the contraband, and thus failed to prove that the substances tested by the forensic chemist were the same materials that were in defendant's possession. Second, defendant contends that the State failed to provide sufficient evidence to prove his intent to deliver the contraband. In resolving a challenge to the sufficiency of the evidence, we must determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. People v. Evans, 209 Ill.2d 194, 209, 283 Ill.Dec. 651, 808 N.E.2d 939 (2004). We will reverse defendant's conviction only if the evidence is so unreasonable, improbable or unsatisfactory that it raises a reasonable doubt of his guilt. Evans, 209 Ill.2d at 209, 283 Ill.Dec. 651, 808 N.E.2d 939.

Chain of Custody
We address defendant's chain-of-custody argument first. When contraband is sought to be introduced, it is the State's burden to establish a chain of custody of sufficient completeness to render it improbable that the evidence has been tampered with, exchanged, or contaminated. People v. Gibson, 287 Ill.App.3d 878, 880-81, 223 Ill.Dec. 234, 679 N.E.2d 419 (1997). In the absence of actual evidence of tampering, substitution, or contamination, the State satisfies its burden by showing that reasonable measures were employed to protect the evidence from the time that it was seized and that it was improbable the evidence was altered. People v. Bynum, 257 Ill.App.3d 502, 510, 196 Ill.Dec. 179, 629 N.E.2d 724 (1994). The purpose of the protective measures is to ensure that the substance recovered from the defendant was the same as the substance tested by the forensic chemist. People v. Fox, 337 Ill.App.3d 477, 481, 272 Ill.Dec. 24, 786 N.E.2d 563 (2003). A sufficient chain of custody does not require every person involved in the chain to testify; nor must the State exclude all possibilities that the article may have been subject to tampering. People v. Irpino, 122 Ill.App.3d 767, 775, 78 Ill.Dec. 165, 461 N.E.2d 999 (1984); see also Fox, 337 Ill.App.3d at 482, 272 Ill.Dec. 24, 786 N.E.2d 563. Accordingly, evidence may be properly admitted, even where there is a missing link in the chain of custody, if there is testimony sufficiently describing the condition of the evidence when delivered which matches the description of the evidence when examined. Irpino, 122 Ill.App.3d at 775, 78 Ill.Dec. 165, 461 N.E.2d 999; Bynum, 257 Ill.App.3d at 510, 196 Ill.Dec. 179, 629 N.E.2d 724; People v. DeLuna, 334 Ill.App.3d 1, 22, 267 Ill.Dec. 778, 777 N.E.2d 581 (2002).
The record reveals that Officer Dahl testified that he recovered, from defendant's right pocket, two ziplock plastic bags containing a white, rock-like substance that he believed was cocaine. Dahl kept the items on his person until he gave them to his partner at the station. Dahl observed his partner inventory the items as number 10030503. The parties stipulated that forensic chemist Sarac received two items sealed under inventory number 10030503 which tested positive for cocaine in the amount of .1 gram. No actual evidence of tampering, substitution, or contamination was introduced at trial.
We find that the evidence in this case satisfied the State's burden to show that reasonable measures were employed to protect the evidence from the time that it was seized and that it was improbable the evidence was altered. Specifically, the recovering officer testified that he had the *870 substance in his sight throughout the time that his partner inventoried it under a certain number. The parties stipulated that the chemist then received the items in a sealed condition under the same inventory number. There are no discrepancies between the testimony of the forensic chemist and that of the recovering officer regarding the description or inventory number of the substance. Accordingly, we find that defendant's conviction, insofar as it required proof of a proper chain of custody of the illicit substance, is amply supported by the evidence.
We acknowledge that another division of this court found that evidence similar to that before us in this case was insufficient to support the defendant's conviction for possession. People v. Cowans, 336 Ill.App.3d 173, 270 Ill.Dec. 220, 782 N.E.2d 779 (2002). The Cowans court considered evidence that the police officer recovered nine small plastic bags with a green tint that were dropped by defendant; the officer inventoried the items as number 2295494; and the forensic scientist received nine items assigned to inventory number 2295494, five of which she tested and found to be 1.2 grams of cocaine. Cowans, 336 Ill.App.3d at 178, 270 Ill.Dec. 220, 782 N.E.2d 779. The Cowans court reversed outright the defendant's conviction for possession, finding that the record did not reflect that the condition of the evidence when seized matched the description of the evidence when tested and that the gap in the chain of custody was not resolved despite the fact that the descriptions given by the witnesses were entirely consistent as to the number of items and inventory number. Cowans, 336 Ill.App.3d at 181, 270 Ill.Dec. 220, 782 N.E.2d 779. We disagree with this holding. As stated before, the State need not have excluded every possibility of tampering, nor present everyone involved in the chain of custody (Irpino, 122 Ill.App.3d at 775, 78 Ill.Dec. 165, 461 N.E.2d 999; Fox, 337 Ill.App.3d at 482, 272 Ill.Dec. 24, 786 N.E.2d 563); and gaps in the evidence are reparable by the admission of evidence describing the condition of the evidence when delivered which matches the description of the evidence when examined (Irpino, 122 Ill.App.3d at 775, 78 Ill.Dec. 165, 461 N.E.2d 999; Bynum, 257 Ill.App.3d at 510, 196 Ill.Dec. 179, 629 N.E.2d 724; People v. DeLuna, 334 Ill.App.3d 1, 22, 267 Ill.Dec. 778, 777 N.E.2d 581 (2002)). We fail to understand how an irreparable gap remains in this case where the stipulated testimony of the chemist includes a description of the material and an inventory number which matches that given by the officer who originally confiscated the evidence.

Failure to Prove Intent to Deliver
Next, we consider defendant's second sufficiency argument regarding the proof of his intent to deliver the drugs in his possession. Again, we review the record in the light most favorable to the State to determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Evans, 209 Ill.2d at 209, 283 Ill.Dec. 651, 808 N.E.2d 939. Because direct evidence of intent to deliver is rare, such intent must usually be proven by circumstantial evidence. People v. Robinson, 167 Ill.2d 397, 408, 212 Ill.Dec. 675, 657 N.E.2d 1020 (1995). Whether an inference of intent is sufficiently raised is a determination that must be made on a case-by-case basis and after a careful review of the circumstances surrounding the defendant's arrest. Little, 322 Ill.App.3d at 615, 255 Ill.Dec. 828, 750 N.E.2d 745, citing Robinson, 167 Ill.2d at 412-13, 212 Ill.Dec. 675, 657 N.E.2d 1020.
Defendant contends that, because only a small amount of the contraband was recovered *871 and other factors that have traditionally been considered as indicia of intent were missing, the State failed to prove that the contraband was not for defendant's personal consumption. Defendant cites People v. Cooper, 337 Ill.App.3d 106, 271 Ill.Dec. 435, 785 N.E.2d 86 (2003), in support. In Cooper, the court vacated the defendant's conviction for possession with intent to deliver based on a similar argument as that raised by the instant defendant. Cooper, 337 Ill.App.3d at 118, 271 Ill.Dec. 435, 785 N.E.2d 86. We note that several divisions of this court, including this one, have declined to follow Cooper on the basis that it does not accurately reflect the law. People v. Clark, 349 Ill.App.3d 701, 285 Ill.Dec. 764, 812 N.E.2d 584 (2004) (evidence sufficient where officer observed two similar transactions whereby a man would approach the defendant and tender him money; the codefendant would walk to the base of tree and pick up an object which he would then give to the person who had given defendant the money); People v. Burks, 343 Ill.App.3d 765, 770-73, 278 Ill.Dec. 880, 799 N.E.2d 745 (2003) (evidence sufficient where transferred objects were removed from the same bag in which cocaine was found in individual packets, at least two transactions occurred, and money was exchanged immediately before transfer of the retrieved object); People v. Bell, 343 Ill.App.3d 110, 119-21, 277 Ill.Dec. 748, 796 N.E.2d 1114 (2003) (evidence sufficient where the defendant accepted money from several individuals and handed them small items retrieved from a location in which plastic bags of cocaine were later recovered).
Defendant attempts to distinguish Bell and Burks on the basis that each of those cases involved greater amounts of the controlled substance than that recovered in this case. We reject this distinction, noting that the amount of drugs recovered, no matter how insignificant, is not dispositive of intent but, rather, is one consideration to be examined in light of the circumstances in the case. Little, 322 Ill.App.3d at 615-16, 255 Ill.Dec. 828, 750 N.E.2d 745. See also Clark, 349 Ill.App.3d at 704-06, 285 Ill.Dec. 764, 812 N.E.2d 584 (finding less than .1 gram of contraband to be sufficient in proving defendant's intent to deliver).
We continue to reject Cooper and find that the evidence in this case was sufficient to support a finding of defendant's intent to deliver the contraband.

Failure to Conduct Krankel Inquiry
Finally, relying on People v. Krankel, 102 Ill.2d 181, 80 Ill.Dec. 62, 464 N.E.2d 1045 (1984), and its progeny, defendant argues that the trial court erred by not conducting a inquiry into defendant's allegation that he was denied the effective assistance of counsel. Defendant contends that he properly raised the ineffective assistance claim to the trial court by making the following statement during his presentence investigation interview:
"When I went to court, my P.D. didn't tell me we were going to trial, she said it was for a Motion. Well, it was trial and I didn't get to call any of [sic] witnesses (my grandmother, my uncle and a cousin) who were there that day and saw everything. I'm going to appeal this."
We find that this statement, contained only in defendant's presentence investigation report, does not by itself bring to the court's attention a claim of ineffective assistance so as to require further inquiry by the court.
We rely on People v. Reed, 197 Ill.App.3d 610, 144 Ill.Dec. 76, 554 N.E.2d 1115 (1990), in addressing this issue. Similarly to defendant in the instant case, the defendant in Reed had opined during his presentence investigation interview that he "was poorly represented at his trial" and *872 that he planned to file an appeal. Reed, 197 Ill.App.3d at 612, 144 Ill.Dec. 76, 554 N.E.2d 1115. In addition, at his sentencing hearing, the defendant made a vague oral allegation that certain alibi witnesses had not been called at his trial. Reed, 197 Ill.App.3d at 611, 144 Ill.Dec. 76, 554 N.E.2d 1115. However, the defendant failed to make any express motion to the court, written or oral, claiming ineffective assistance of counsel or requesting substitute counsel. Reed, 197 Ill.App.3d at 612, 144 Ill.Dec. 76, 554 N.E.2d 1115. The Reed court found that, under the circumstances, the defendant had failed to assert a claim of ineffective assistance of counsel which would give rise to a Krankel inquiry. Reed, 197 Ill.App.3d at 612-13, 144 Ill.Dec. 76, 554 N.E.2d 1115. The court reasoned as follows:
"While we do not suggest that a pro se claim of ineffective trial counsel need take a specific form, we cannot expect the trial court to divine such a claim where it is not even arguably raised." Reed, 197 Ill.App.3d at 612-13, 144 Ill.Dec. 76, 554 N.E.2d 1115, citing People v. Lewis, 165 Ill.App.3d 97, 109, 116 Ill.Dec. 119, 518 N.E.2d 741 (1988) and People v. Sperow, 170 Ill.App.3d 800, 812-13, 121 Ill.Dec. 417, 525 N.E.2d 223 (1988).
In the instant case, defendant's only allegation regarding his counsel's performance is contained in the presentence investigation report. Like the defendant in Reed, defendant never raised the issue to the court by way of written motion. Furthermore, he did not even repeat the allegation or request new counsel when he was given the opportunity to orally address the court at his sentencing hearing. We find that defendant's statement contained in the presentence investigation report, without more, was insufficient to raise a claim of ineffective assistance to the trial court and did not warrant a Krankel-type inquiry.
Affirmed.
HARTMAN and THEIS, JJ., concur.